UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| TAMMY ARNOLD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:15-CV-81-RLW |
| ) | |
| CAROLYN COLVIN, ) | |
| ACTING COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Tammy Arnold's ("Arnold") application for disability insurance benefits.

**I. Background**

Arnold filed an application for disability benefits on August 24, 2011. The Social Security Administration ("SSA") denied Arnold's application for benefits, and she filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). The SSA granted Arnold's request and a hearing was held on September 17, 2013. The ALJ issued a written decision on December 13, 2013, upholding the denial of benefits. (Tr. 6-18). Arnold filed a timely Request for Review of Hearing Decision with the Appeals Council (Tr. 5). The Appeals Council denied Arnold's Request for Review. (Tr. 1-3). The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Arnold filed this appeal on May 8, 2015. (ECF No. 1). Arnold filed a Brief in Support of her Complaint on

August 11, 2015. (ECF No. 11). The Commissioner filed a Brief in Support of the Answer on October 5, 2015. (ECF No. 14).

## II. Decision of the ALJ

The ALJ found that Arnold had the following severe combination of impairments: bipolar disorder, anxiety disorder, post-traumatic stress disorder, and history of marijuana abuse. (Tr. 11). The ALJ, however, determined that Arnold did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 13). The ALJ found that Arnold had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels except for performing more than simple, routine, repetitive tasks with no more than superficial interaction with the public or co-workers and no more than occasional changes in routine work setting. (Tr. 14). The ALJ found that Arnold has no past relevant work. (Tr. 16). The ALJ determined that, based on Arnold's RFC, jobs exist in significant numbers in the national economy that Arnold could perform. (Tr. 17). Consequently, the ALJ found that Arnold was not disabled since August 24, 2011, the date the application was filed. (Tr. 17).

## III. Administrative Record

The following is a summary of relevant evidence before the ALJ.

### A. Hearing Testimony

Arnold testified on April 11, 2013, as follows:

Arnold appeared at the hearing without representation. (Tr. 26-27). The ALJ did not have any medical evidence since March 2011. (Tr. 27-28). Arnold stated that she has been seeing her regular primary doctor every month since March 2011. (Tr. 28). Arnold decided that she needed representation to continue pursuing her claim. (Tr. 30-33).

Arnold testified on September 17, 2013, as follows:

Arnold's attorney stated that Arnold has anxiety attacks at least twice a week. (Tr. 39). Arnold has been diagnosed with bipolar disorder, suicidal ideations, major depression, post-traumatic stress disorder ("PTSD"), and has crying spells. (Tr. 39). She has hypothyroidism, which causes weight gain and lethargy. (Tr. 39). She has high blood pressure, which causes her to get dizzy. (Tr. 39). She takes two medications a day. She gets headaches about twice a week. (Tr. 39).

Arnold was born in 1965 and is 48 years old. (Tr. 40). The highest grade she has completed was Eighth grade, and she did not get a GED. (Tr. 40). She was in regular classes, not special education. (Tr. 40). She can read. (Tr. 40). She can perform basic math. (Tr. 40). She has a driver's license. (Tr. 41). She has not driven for two years because she gets nervous. She lives with her daughter. (Tr. 41). She is 5'1" and weighs 180 pounds. (Tr. 41). She has not worked anywhere since August 24, 2011. (Tr. 41). She has mental problems. She was sexually and physically abused when she was younger. (Tr. 41). Her brother had intercourse with her and she was abused by her children's father. (Tr. 42). She has nightmares three times a week and flashbacks that cause panic attacks. (Tr. 42). She has panic attacks twice a week on average. (Tr. 41-42). The panic attacks last 30-40 minutes, when she feels like she cannot breathe. (Tr. 43). She takes Klonopin for panic attacks. (Tr. 43). She was prescribed Klonopin by Dr. Corwin at Ripley County. (Tr. 43). Dr. Corwin left the Ripley County office. Arnold she sees a different doctor at Ripley County at least once a month for medication. (Tr. 43-44).

She has been diagnosed as bipolar, which causes her to be unable to concentrate. (Tr. 44). She gets depressed. She has manic episodes where she bounces around from one activity to the next. (Tr. 44). Sixty percent of the time she is in a deep depression; she is manic thirty

3

percent of the time; and she is normal ten percent of the time. (Tr. 44). Her medication helps prevent her from being extremely depressed. (Tr. 44). She has no side effects from medication. (Tr. 45).

Physically, she gets out of breath trying to do things. (Tr. 45). She has problems with her thyroid, which causes her weight gain, makes her tired, and causes her to become easily agitated. (Tr. 45). She takes medication to regulate her thyroid. (Tr. 45). She takes medication to control her high blood pressure. She has had panic attacks for a few years. (Tr. 46).

Arnold lives with her daughter in a house. (Tr. 46). She helps her daughter with the cooking. Arnold can sweep and mop "when the mood hits [her]." (Tr. 47). She does not go to the grocery store "if [she] can get out of it." (Tr. 47). She has a friend that will take her to the grocery store. (Tr. 47). She has no outside activities. (Tr. 47). She watches whatever is on television. (Tr. 47). She cannot concentrate on what is on TV. (Tr. 47). Dr. Corwin has not recommended that Arnold see a counselor. (Tr. 48). She has been taking Klonopin every day for a couple of years. (Tr. 48). She is not taking Xanax any more. (Tr. 48). She takes Celexa for her depression. (Tr. 48). Arnold is alright physically. (Tr. 48-49). Her educational level would prevent her from working because she cannot comprehend reading very well. (Tr. 49).

She cannot cook or clean on a consistent basis. (Tr. 49). She has times that she is so depressed that she cannot perform any household work. (Tr. 50).

Vocational expert Roxane Minkus testified as follows:

The first hypothetical person would be the same age as Arnold, with a limited eighth-grade education and no past work experience. (Tr. 51). This individual would be limited to simple, routine, and repetitive tasks, and would be unable to perform tasks requiring more than a superficial interaction with the public or coworkers. (Tr. 51-52). The individual would be

4

unable to deal with more than occasional changes in a routine work session. (Tr. 52). This individual would have no external limitations. (Tr. 52). This individual could perform work as a janitor, house cleaner for a hotel or motel, and as an industrial cleaner. (Tr. 52-53).

The second hypothetical person would have the same limitations as the first hypothetical person, except the individual would have less than occasional contact with the general public and coworkers. (Tr. 53). The second hypothetical person would still be able to perform work as an industrial cleaner and a house cleaner. (Tr. 53). However, about 30-40% of the janitor positions would require more interaction with the general public and coworkers. (Tr. 53-54).

The third hypothetical person would have the same limitations noted in hypotheticals one and two, except would have the additional limitation of no contact with the public or coworkers. (Tr. 54). No jobs would be available for such a person that had to work in isolation. (Tr. 54).

No jobs would be available for a person who would be off-task 20 percent of the time because of psychological problems. (Tr. 54).

**B.    Medical Evaluations**

Arnold's relevant medical evaluations are summarized as follows:

On May 3, 2011, Christy A. Parker conducted a Physical Residual Functional Capacity Assessment of Arnold. (Tr. 57-63). Arnold was noted to have no exertional limitations; only occasional climbing and occasional balancing; no manipulative limitations; no visual limitations; no communicative limitations; and to avoid concentrated exposure to hazards. Parker concluded that Arnold should be able to perform other work.

On May 10, 2011, Mark Altomari, Ph.D. conducted a Mental Residual Functional Capacity Assessment on Arnold. (Tr. 297-99). Dr. Altomari concluded that Arnold was moderately limited in her ability to carry out detailed instructions; her ability to maintain

5

attention and concentration for extended periods; her ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and her ability to accept instructions and respond appropriately to criticism from supervisors. Dr. Altomari determined that Arnold has the ability to understand, remember and carry out short and simple instructions; she can relate appropriately to co-workers and supervisors in small numbers and for short periods of time; she can adapt to most usual changes common to a competitive work environment; and she can make simple work-related decisions.

On May 10, 2011, Dr. Altomari also conducted a Psychiatric Review Technique. (Tr. 300-10). Dr. Altomari determined that Arnold suffered from anxiety-related disorders. Dr. Altomari found that Arnold had moderate difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence, or pace.

On June 3, 2011, Arnold was seen by Darrell Hutchison, M.D. with complaints of pain in her lower back and upper legs due to stepping in a hole the previous day. (Tr. 311). She also stated that her feet were swelling more with the heat, but that she was "doing good." (Tr. 311).

Arnold was admitted to behavior health at Poplar Bluff from July 30, 2011 through August 4, 2011 for depression. (Tr. 321-34). Arnold admitted occasional marijuana use and intravenous use of K2 eight months ago. Arnold was diagnosed with bipolar disorder, PTSD, hypertension, hypothyroidism, and drug abuse. Her drug screen was positive for barbiturates, benzodiazepine and THC. Arnold ambulated independently and performed her activities of daily living independently. (Tr. 332). Arnold's GAF at discharge was 50.

On August 30, 2011, Arnold was seen at Corning Area Healthcare and diagnosed with anxiety, hypertension, and depression. (Tr. 338-39). She stated that the Lidoderm patches for her lower back pain were helping.

On September 6, 2011, Arnold completed a Function Report-Adult. (Tr. 213-23). She reported that she gets dressed, eats, watches TV, goes outside, watches more TV, takes a bath, and goes to bed. She cares for her pets. She cannot stay asleep because she has too much on her mind. She has no problems with personal care. She sometimes needs reminders to take her medication. She can prepare frozen dinners and sandwiches. She prepares those meals daily. She can do laundry two times a week and clean once a week. She does not do yard work. She does not like to go out alone. She can drive but does not have a car. She shops in stores for household items once a month for 45 minutes. She can pay bills, handle a savings account, count change and use money orders. She spends time with others, talking on the phone or visiting in person. She goes to the doctor every month. She reported that she has trouble bending, reaching, kneeling, talking, with her memory, completing tasks, concentrating, understanding, following directions, and getting along with others. She does well with authority.

On October 6, 2011, Arnold was seen for complaints of back pain. (Tr. 384). She was prescribed Vicodin. She appeared alert and oriented, with no evidence of thought disorder.

On November 1, 2011, Arnold was seen for complaints of chronic anxiety. (Tr. 382). She was given a referral for psychiatric help. She was alert and oriented.

On December 6, 2011, John Singer, Ph.D. conducted a Psychiatric Review Technique of Arnold. (Tr. 349-359). Dr. Singer diagnosed Arnold with affective disorders, anxiety-related disorders, and substance addiction disorders. Dr. Singer stated that Arnold suffers from depression, anxiety and post-traumatic stress disorder ("PTSD"). Dr. Singer also said that

7

Arnold suffers from marijuana abuse. Dr. Singer stated that Arnold has moderate difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence, or pace; one or two repeated episodes of decompensation, each of extended duration. Dr. Singer found that Arnold remains capable of at least simple, repetitive tasks that do not require much interpersonal interaction.

On December 6, 2011, Dr. Singer completed a Mental Residual Functional Capacity Assessment of Arnold. (Tr. 360-62). Dr. Singer found Arnold is moderately limited in her ability to understand and remember detailed instructions; moderately limited in her ability to carry out detail instructions; moderately limited in her ability to maintain attention and concentration for extended periods; moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; moderately limited in her ability to interaction appropriately with the general public; and moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors.

From December 7, 2011 through May 10, 2013, Arnold was seen almost monthly at Southeast Health Care for medication refills. (Tr. 366-73).

On April 5, 2012, Arnold was seen at Southeast Healthcare for medication refills and for complaints of hurting her lower back on April 4, 2012. (Tr. 378).

On August 20, 2012, Arnold was seen at Southeast Healthcare with complaints of back pain. (Tr. 375).

On December 19, 2012, Arnold had an MRI at Black River Medical Center. (Tr. 395). The MRI showed degenerative changes, stenosis, and disc protrusions.

On March 8, 2013, Arnold was seen at the Health Center of Ripley County. (Tr. 368). Arnold complained of difficulty sleeping and that Haldol and Doxepin were not effective. (Tr. 368).

On April 12, 2013, Arnold's laboratory results showed that she tested reactive for Hepatitis C.

On June 10, 2013, Arnold was seen at the Health Center of Ripley County. (Tr. 365). Arnold complained of continued problems falling and staying asleep.

## IV.  Legal Standard

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities ... ." *Id.* "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent claimant from doing past relevant work.[1] 20 C.F.R. §§ 416.920(e), 404.1520(e). At this step, the burden rests with the claimant to establish his RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008); *see also Eichelberger*, 390 F.3d at 590-91; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f). If it is found that the claimant can still perform past relevant work, the claimant will not be found to be disabled. *Id.*; 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform past relevant work, the analysis proceeds to Step 5.

At the fifth and last step, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). If it is found that the claimant cannot make an adjustment to other work, the claimant will be found to be disabled. *Id.*; *see also* 20 C.F.R. § 416.920(g). At this step, the Commissioner bears the burden to "prove, first that the claimant retains the RFC to perform other kinds of work, and, second that other work exists in substantial numbers in the national

---

[1] "Past relevant work is work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn how to do it." *Mueller v. Astrue*, 561 F.3d 837, 841 (8th Cir. 2009) (citing 20 C.F.R. § 404.1560(b)(1)).

economy that the claimant is able to perform." *Goff*, 421 F.3d at 790; *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). The Commissioner must prove this by substantial evidence. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

If the claimant satisfies all of the criteria of the five-step sequential evaluation process, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Id.*; *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)).

This court reviews the decision of the ALJ to determine whether the decision is supported by "substantial evidence" in the record as a whole. *See Smith v. Shalala*, 31 F.3d 715, 717 (8th Cir. 1994). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Therefore, even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the ALJ's decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). In *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

As such, "[the reviewing court] may not reverse merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)). Similarly, the ALJ decision may not be reversed because the reviewing court would have decided the case differently. *Krogmeier*, 294 F.3d at 1022.

## V. Discussion

### A. Physical and Mental Impairments

The ALJ determined that Arnold was able to perform a full range of work at all exertional levels. Arnold claims that the ALJ erred by failing to consider the combined effects of her mental and physical defects. Arnold notes that she has suffered chronic mental impairments for years. Her psychotropic medication is not helping. (ECF No. 11 at 8). In addition to her mental impairments, she also suffers from a broad-based disc protrusion at L1-2 with impingement; impingement on the nerve root at L2-3; and bulges at L3-4, L4-5, L5-S1. Arnold's condition is exacerbated by her weight gain, which is caused by her hypothyroidism. (ECF No. 11 at 8-9). Arnold maintains that she was entitled to have her impairments considered as a whole. (ECF No. 11 at 9).

The ALJ acknowledged Arnold's inpatient hospitalization from July 30, 2011 through August 4, 2011. (Tr. 11, 321-34). The ALJ found that her condition improved with medication and treatment, and her mental status examination upon discharge showed that she was in stable condition, fully oriented, calm and cooperative, with no suicidal or homicidal ideation. (Tr. 11, 322). The ALJ also found that there was no evidence her condition had deteriorated or that she needed emergency or inpatient treatment during the relevant period, she had no formal mental health treatment, and she received mental treatment only from her primary care provider, who prescribed her medication. (Tr. 11, 15, 286, 289, 291, 294). There was no evidence that Arnold's medication was ineffective, and she testified that her depression medication helped and had no side effects. (Tr. 15, 44-45). *See Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (quoting *Brace v. Astrue,* 578 F.3d 882, 885 (8th Cir.2009) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.")).

12

Arnold's arguments rely almost exclusively on evidence that she failed to submit to the ALJ. In any event, the ALJ properly considered Arnold's credibility in finding her impairments were not as severe as alleged. (Tr. 11-18). On March 8, 2013, Arnold was seen at the Health Center of Ripley County. (Tr. 368). Arnold complained of difficulty sleeping and that Haldol and Doxepin were not effective. (Tr. 368). This record is the only one cited by Arnold to support her claim that she had several medication changes but her medication provided only temporary benefits. (ECF No. 11 at 9). This record does not support Arnold's claim of total disability based upon mental impairments. Further, the ALJ properly found that Arnold had mild limitations in her activities of daily living, moderate social functioning, and moderate limitations in concentration, persistence and pace. (Tr. 13). Arnold's ability to cook, clean, grocery shop, watch television, and live and function independently contradicted her claims of total disability. (ECF No. 14 at 10 (Tr. 15, 46, 47, 49-50)). The ALJ determined that Arnold's testimony that she could perform chores if she wanted or felt like it weighed against her credibility. (Tr. 46-47, 50, 214-17).

Further, the ALJ properly relied upon the opinion of the state agency psychological consultant who found that Arnold could perform simple work with limited interpersonal interaction. (Tr. 14, 16, 349-62). The ALJ accommodated Arnold's credible limitations by limiting her to simple, routine, repetitive tasks with no more than superficial interaction with others and no more than occasional changes in a routine work setting. (*Id.*) Although Arnold argues that she had marked limitations "[b]ased on the medical in this claim" (ECF No. 11 at 15), she has identified no specific medical records to support her claims. Instead, Arnold relies on her own statements that her mood swings, crying spells, panic and anxiety attacks, and other mental health issues make her unable to work. However, Arnold ignores the medical records

13

that her mental status examinations were generally normal and that she did not seek separate mental health treatment. (Tr. 382, 384).

Likewise, the ALJ found that Arnold's impairments were non-severe. (Tr. 11-13). Arnold did not discuss at the hearing before the ALJ judge any physical problems that would prevent her from working. (Tr. 49). She stated that only her education prevented her from working. The ALJ noted that Arnold had provided the ALJ with no evidence showing that she was treated for back pain during the relevant period of alleged disability, *i.e.*, since August 24, 2011. (Tr. 12). The ALJ noted that Arnold sought treatment in June 2011 for low back pain after she stepped in a hole, and she was diagnosed with low back and upper leg tenderness. (Tr. 311). But there is little other evidence of any back pain in the record. Arnold's December 19, 2012 MRI indicates degenerative changes, stenosis, and disc protrusions, but her treatment notes fail to identify any functional limitations based upon Arnold's back pain. She indicated that the Lidoderm patches for her lower back were helping. (Tr. 338). Accordingly, the Court holds that the ALJ properly did not account for Arnold's alleged back pain because it was not supported in the medical record.

Further, the Court holds that Arnold's other conditions cannot be the basis for a functional limitation under the record. The ALJ properly found that Arnold's hypertension and hypothyroidism were stable and well-controlled with medication. Arnold also confirmed this. (Tr. 12, 45, 48, 285-86, 289, 291, 294). Arnold faulted the ALJ for discrediting her alleged impairment of hepatitis C, but the ALJ did not have the opportunity to review the records that supported a hepatitis C diagnosis. (ECF No. 11 at 9-10 (citing Tr. 367-68)). Further, the Court holds that the evidence submitted by Arnold shows no evidence of any functional limitations as a result of her hepatitis C. (Tr. 367-68, 386). Further, Arnold's ability to perform a wide range of

daily activities also weighs against her claim that she has disabling physical impairments. (Tr. 46, 47, 49-50, 214-17, 332). The ALJ properly analyzed Arnold's physical impairments and found that they were nonsevere. See 20 C.F.R. §416.921(a).

For these reasons, the Court holds that the ALJ properly analyzed Arnold's mental and physical impairments. (Tr. 11-18).

B. **Discrediting Arnold**

Arnold makes a separate, but similar argument, that the ALJ improperly discredited her impairments. Arnold states that the records show that she was hepatitis C reactive and was placed on medication. (ECF No. 11 at 9-10). Arnold contends that her mental impairments consist of 90% of her disability, but she also suffers from chronic back pain. (ECF No. 11 at 11). Arnold states that she suffers from hypothyroidism, which causes significant weight gain and pedal edema at her ankles bilaterally. (ECF No. 11 at 11). Arnold claims that her weight gain and ankle swelling alone would prevent her from performing janitorial work. (ECF No. 11 at 11). Arnold further notes that she suffers from multi-level degenerative disc disease and chronic back pain, as well as chronic fatigue and hepatitis C. (ECF No. 11 at 12). These factors would further limit her ability to perform certain jobs, especially those requiring bending over frequently or working in hot temperatures. Finally, Arnold maintains that she suffers mental impairments, including bipolar disorder and panic attacks, but the ALJ only limited Arnold to no more than superficial interaction with the public or co-workers and occasional changes in a routine work setting. Arnold claims that she cannot perform work at all exertional levels, including as a janitor and housekeeper, with her chronic back pain, multilevel degenerative disc disease, disc bulges, panic attacks, PTSD, and bipolar disorder. (ECF No. 11 at 12).

As previously noted, the ALJ properly analyzed Arnold's mental and physical impairments. At the time of the hearing, the medical records before the ALJ did not indicate that Arnold was hepatitis C reactive. However, the records submitted after the hearing do not demonstrate that Arnold's hepatitis C implicated her functional capacity. The records generally show that Arnold's physical impairments, particularly her hepatitis and back pain, were nonsevere and her mental impairments were not as severe as alleged. (Tr. 11-18).

Further, the ALJ found that Arnold's poor work record weighed against her credibility and indicated a lack of motivation to work. (Tr. 15, 183, 186). Arnold has only worked one job for three days and has no past earnings or past relevant work. *See Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) ("A lack of work history may indicate a lack of motivation to work rather than a lack of ability."); *Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993) (claimant's credibility is lessened by a poor work history).

Finally, the ALJ stated that Arnold's "substance addiction disorder consists of a history of marijuana abuse." (Tr. 11). The ALJ found that this impairment imposed significant mental functional limitations. However, the ALJ found that this impairment did not warrant any further limitation. The Court holds that the record supports this finding.

Therefore, the Court holds that the ALJ decision reflects a proper credibility determination and is supported by substantial evidence in the record.

C. **Severity of Arnold's Mental Impairment**

Arnold claims that the ALJ failed to evaluate the severity of her mental impairment listed in Appendix 1, Part 404, Subpart P, regulation No. 4, Listings §12.04 and 12.06. (ECF No. 11 at 13). Arnold notes that the regulations provide a special method for evaluating mental impairments. (ECF No. 11 at 13 (citing 20 C.F.R. 404.1520a and 416.920a)).

Arnold claims that her claim regarding deterioration of decompensation in work settings should be evaluated under the fourth "B" criteria, her depressive disorder should be evaluated under the revised "C" criteria under Listing 12.04, and her anxiety related disorder should be evaluated under the revised "C" criteria under Listing 12.06. (ECF No. 11 at 14). Arnold asserts that, even assuming she is moderately limited, the combination of her exertional and non-exertional limitations coupled with her mood swings, crying spells, hysteria, panic attacks, anxiety attacks, and PTSD would prohibit work on a regular basis. (ECF No. 11 at 15).

The Court finds that substantial evidence supports the ALJ's finding that Arnold could perform other work. *See* ECF No. 14 at 14-15. The Court first notes that the ALJ specifically state that he considered the "paragraph B" and "paragraph C" criteria and found that they were not satisfied. (Tr. 13-14).

In framing the RFC, the ALJ determined that Arnold had the RFC to perform work at all exertional levels with limitations to simple, routine, repetitive tasks with no more than superficial interaction with the public or coworkers and no more than occasional changes in a routine work setting. (Tr. 14). The analysis is similar to that in *McKinney v. Apfel*, 228 F.3d 860, 864 (8th Cir. 2000),

> The ALJ recognized that [Arnold] suffers from certain mental impairments and accordingly determined that [Arnold] could not perform complex or technical work. The ALJ also determined, however, that these impairments were not disabling. We believe substantial evidence supports this conclusion.

The ALJ's finding that Arnold could work at all exertional levels was supported by Arnold's testimony that she had no physical limitations and her admission that she could perform activities of daily living. (Tr. 14, 46-47, 49-50, 214-17). Likewise, the RFC limited Arnold to simple, routine, repetitive tasks, which was consistent with the findings of the state agency psychological

17

consultant and with Arnold's ability to perform her activities of daily living independently. (Tr. 14-15, 46, 47, 49-50, 214-17, 297-310, 349-362). Likewise, the limitations involved no more than superficial interaction with the public or coworkers and no more than occasional changes in her work setting, which is also consistent with the state agency opinion and with Arnold's statements that she had some difficulty with socialization and routine changes. (Tr. 14, 217-19). The vocational expert also considered a hypothetical question that included limitations that were consistent with the ALJ's findings as to Arnold's RFC. (Tr. 51-52). The vocational expert determined that positions exist that an individual with Arnold's limitations could perform. (Tr. 52-53). As a result, the vocational expert's testimony also constitutes substantial evidence to support the ALJ's finding no disability.

In any event,, the Court holds that any failure to discuss any of the specific criteria for the Listings, which the Court believes the ALJ did, was a harmless deficiency in the ALJ's opinion-writing technique. The Eighth Circuit has stated that it "will not set aside an administrative finding based on an arguable deficiency in opinion-writing technique." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir.2004) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir.1996)). This same rationale has been used in other circumstances where the deficiency in "writing techniques" had no bearing on the outcome of the case. *See e.g. Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir.2008); *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992). Here, it is clear that any failure to expressly discuss those Listing criteria did not affect the outcome. The ALJ properly considered all of the evidence in forming the RFC, and the Court holds that the ALJ's decision is supported by substantial evidence.

## VI. Conclusion

Based on the foregoing, the Court finds that the ALJ's decision was based on substantial evidence in the record as a whole and should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **AFFIRMED**. A separate Judgment will accompany this Order.

Dated this 29th day of August, 2016.

*Ronnie L. White*
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE